May it please the Court, my name is Paul Ostroff, I'm with the law firm Lane Powell Spears-Leberski, and we represent the Respondent at the Lee in this matter, George Joseph Orchard, citing. In this case, the Board's decision suffers from several fatal defects, which we submit should merit denial of enforcement. Alternatively, in this case, because the Board departed from its own precedence, because the Board failed to consider important evidence, failed to make findings on critical issues, then at a minimum we submit that remand is appropriate in this case. And as I go through the issues, I may identify those areas where the Court may consider, or may wish to consider, remand of this case so that the Board can discharge its obligation to properly adjudicate this case. Well, let me understand this. When did the relevant events underlying this case occur? In 1996, Your Honor. I recognize that the delay has been, that, I mean, the employer is not responsible for the delay. There has been, this is a case of some age, I recognize that. I'm sorry, and as I go through the issues, I'd like to identify some of these problem areas that merit denial of enforcement coupled with remand back to the Board so that the Board can make appropriate findings or decide some of these critical issues so that this case can be properly adjudicated. I'd like to first turn to an issue which we submit is a fatal defect, and that is that the record in this case does not show that the General Counsel even sustained his burden of persuasion on his prima facie case. The only evidence, and the Board's case rises or falls on its ultimate conclusion that Ms. Gutierrez heard a statement in a meeting in which Mr. Berndt said the evaluation could be used or the recall, pardon me, the evaluations could be used to not rehire some union supporters. That's the fundamental foundation, the reed upon which the Board's case rests. Now, generally, in an 883 discharge case of this nature, the Board has the burden of proving that the decisions to, in this case, not recall, were a result of intentional conduct animated by anti-union sentiments on the part of the employer. The only evidence of animus is that. In fact, the ALJ, the ALJ's decision, and the Board adopted the ALJ's decision was, in the absence of that one statement, the Board didn't carry the day. The General Counsel did not carry the day. The burden of proof was not sustained. So, on that basis, we submit that there's a fatal defect in this case which requires, which requires denial of enforcement with no need for a remand because simply the proof is not there. Now, the second area where there is a fatal defect, and it really is related to the first one in some respects as it goes to the issue of making out the right line elements that the General Counsel had to prove, is that there was never any individual evaluation of the competency of the employees who weren't recalled. The Board expressly found that there was nothing improper about the layoff, that the decision to modernize the employer's facilities was not in any way animated or connected with union animus, and that the employer's decision to make competency evaluations was legitimate. And we've discussed that evidence in our brief. There were problems with competitiveness, problems with employees not handling the fruit properly which result in loss to the company. So, the second defect is that there was never an individual evaluation made of the competency or the determinations of competency. And the reason that's important insofar as the prima facie case is concerned is that the General Counsel bears the burden of persuasion on the case. Not the burden of simply making out the simple elements as would be true under let's say McDonnell-Douglas v. Green, but the burden of persuasion. And the employer's evaluation of the competency of these employees was never considered by the Board. And that would have been, simply in the General Counsel's prima facie case, a factor that had to be considered. And it was simply ripped from the context and never considered by the Board. The third issue is, and it really goes to the employer's right-line defense that it had a legitimate business reason for the decision which it took, which it made. So that even if we assume that this record is sufficient to sustain the prima facie case by the General Counsel, that the employer, still under right-line, is entitled to prove that the decision would have been the same. That it had good, sound business reasons for the decisions that it made concerning the competency of these employees. And what the Board did was leapt over the requirement of right-line that the employer be permitted to show that. In essence, what the Board stated is, well, we find that using the demarcation line of a 7 rating was pretextual. I'll address why I think that pretext finding is invalid. But it left, in so doing, it simply stated, well, having found that the line of 7 was a pretext, then we don't even have to go into and evaluate the evidence that the employer put forth showing the lack of competence on the part of these employees. And I submit that that flies in the face of this circuit's decision in Zurn Industries. Because in essence, what the Board did was reinsert into the employer's right-line defense a requirement that it not merely show a legitimate business justification, but also show that that legitimate business justification itself was completely free of any animus. What did the ALJ find? The ALJ concluded that the decision to lay off employees was not unlawful, that the decision to revitalize and modernize its facilities was not unlawful, but that the employer's decision to not recall 15 of the 30-plus employees on that line did violate the Act. And he did so on the theory that the evaluation process, let me rephrase that. In essence, what the Board ultimately found is that the use of the information derived from the evaluation process, not the evaluation process itself, as I understand the Board's decision, but the use, i.e., the adoption of a cutoff of a score of seven, was what caused the failure to recall to be considered discriminatory. Now, the ALJ's reasoning and how he evaluated the evidence and his legal analysis goes to some other issues that I believe also merit denial of enforcement and or denial of enforcement coupled with a remand. Well, what did the ALJ find with respect to the legitimate, lack of legitimate business reasons? He never specifically, as to lack of a legitimate business reason. He found an animus, I take it. Yes, he did. He concluded that this one statement by Mr. Barrett, which was uncorroborated by anyone except Ms. Gutierrez, who, as we note, well, was a violation of the Act because the process or the Now, I'd like to turn now to the issue of whether the Board's decision is sustained by substantial evidence. And, of course, because this is an administrative proceeding, it differs from an ordinary appeal from a fall on the reasons that it articulated, not on the reasons that might be advanced by the Board's counsel or on the basis of reasons that the court might decide to infer or extrapolate from that record. Embedded within the issue of substantial evidence are serious problems with the Board's decision-making in this case, and that goes to its crediting of the testimony of Witness Gutierrez, who ultimately, according to the Board, without her testimony, the case fails. And let me address Gutierrez's testimony in three areas, because I think they demonstrate the problem with the Board's adjudication in this case. Gutierrez was the only witness who testified to this comment by Mr. Baird, and it's all derived from a meeting that she claims she was present at in June of 1996. The Board's theory of credibility as to why — Are you asking us to remake credibility findings? Your Honor, I don't believe that the court — this Court cannot substitute its judgment, but it can determine — you're absolutely right, this Court cannot re-adjudicate the credibility determination. But what it can do is, if it concludes that the Board's theory of credibility was invalid, or that the Board failed to comply with its own precedents, policies or standards, can remand the case back to the Board to explain — Well, what is the legal error that was committed, and what is the authority that says that it's there? Okay. The legal error, first of all, was that the Board's theory of credibility has to be sustained by substantial evidence, and one of its theories of credibility was that Ms. Gutierrez was a — it was not improbable that she would have been at this meeting because she was a supervisor. And the evidence, we believe, is quite compelling, as noted in our briefs, that she wasn't a supervisor. She could not have been a supervisor. She testified that the meeting took place in June. She didn't become a supervisor until August. I mean, that's her testimony. So one of the reeds upon which the Board's determination of credibility rests is simply pulled out, and their entire theory of why her testimony should be credited is invalid. Secondly, the Board never addressed what Gutierrez admitted was a false statement in her affidavit on a material point. In her affidavit given to a Board agent months after she ceased being an employee of George Joseph Orchard Siding, she stated, I don't recall anyone discussing during this so-called meeting the union sympathies of employees or their union activities. At the hearing, she got on the stand and said they did discuss it. When she was confronted with this, she had no cogent explanation. She admitted that she had lied in her affidavit. And what that raises, of course, is, well, first of all, the issue was never addressed by the Board, even though it was raised in the employer's exceptions. But, moreover, the Board precedent, which has dealt with this issue in numerous cases, which we've discussed in our brief, shows that the Board customarily, one, must evaluate that, and it didn't. She did give a reason, an explanation. Yes. And I'd be happy to address that, although there was never really a finding. She said she was afraid of the Board. Well, actually, she didn't say that she was afraid. She said she was concerned about revenge. Right. First of all, there was no finding on that point made by the Board. But, secondly, what Ms. Gutierrez repeatedly said was that the employer had been good to her. It's what she said. It's what she said, though. Am I correct that the ALJ concluded that her testimony should be credited because her demeanor was superior to others under all the circumstances, and, in consequence, I give greater weight to her recitation of conversations and events? He made that statement, Your Honor. However, I'm sorry. Yeah, that's appropriate to a credibility determination. Yes. We agree, and we're aware of the standard on review. As to whether she was a supervisor or not, she may not have been a supervisor in June, but she was a supervisor two months later. That is correct. Yes. But I think it bears noting, Your Honor, that the Board's theory of credibility was that, in essence, the witnesses were an equipoise. I mean, there was nothing inherently improbable. But it based the ---- Who has the strongest authority for overturning this kind of credibility determination? I'm sorry, Your Honor? I asked you before, what is the authority? What is the case that says you have witnesses who conflict? The ALJ says, I credit this one because her demeanor was superior, and she was a supervisor or on her way to becoming a supervisor, and she explained inconsistencies. What case allows us to say you can't do that? Your Honor, there are, first of all, we discussed the Krispy Kreme case, which I recognize is a Sixth Circuit decision. And secondly, that the court in its evaluation of the evidence based upon substantial evidence review. Universal camera, we're going back to that. A universal camera standard I recognize is the generalized, but ---- is the generalized standard. There are also ---- We don't agree with you on the credibility. I'm sorry, Your Honor? If we don't agree with you on overturning the credibility, what's your next best argument? Well, Your Honor, we believe that as to the first two points, one, that the only evidence was of a, quote, free-floating animus, and that is insufficient as a matter of law, point one. Point two, the failure of the board to consider the legitimate evaluation as to the competency of the employees, and the board's analysis, which in essence did leapfrogged over the requirements of right line and this Court's decision in CERN. Okay. I think we understand. Okay. Thank you, Your Honor. I'll reserve mine. You have about two minutes. May it please the Court. My name is David Fleischer, representing the National Labor Relations Board. Now, on the issue of credibility, of course, the Walton case makes clear that normally credibility is for the administrative law judge, who's the only one who actually sees the witnesses and hears them testify. And here the administrative law judge points out that either Gutierrez is a witness who is honestly testifying to what she heard Mr. Berndt say, or she's a liar making up stories out of whole cloth to harm the employer. And I would point out Gutierrez is a witness who states on the stand, and these are statements that the employer does not claim are false, who says she doesn't care for the union or its supporters. She thinks the counsel for the general counsel is a pain in the neck. She says that at a couple of points. She says the company has been good to her and that she's very close in particular to company supervisor Hernandez. A witness like that is hardly likely to make up stories to help the union and the general counsel and hurt the company. On the question of when the meeting occurred, Hernandez was not sure. I mean, sorry, Gutierrez was not sure of the date, said it could have been June or it could have been July. It's clear that any meeting at which the petition denouncing Hernandez was discussed had to be after June 27th, because the petition in question was dated June 27th. And all Gutierrez could remember was that it was during the cherry season. That season lasted until July 9th at Zilla until late July in Yakima. And the record is not clear as to when Gutierrez was told she was going to become a supervisor. And that date rather than the date when she started performing supervisory functions is really the key date. Once she was told she was a supervisor, one would expect her to be included in supervisors' meetings. So there's not the sort of inherent implausibility in her attending supervisory meetings that would justify overturning the credibility resolutions. Now, on the point of the validity of the evaluations, I would first observe that there's a great deal of gift if one assumes that the board properly credited her testimony and that Mr. Barrett made the statement that we've got to get rid of the union people and we can use the evaluation system to do it. The case becomes remarkably similar to the Leggs case, which is cited in our briefing, which I argued before another panel of this court in Pasadena 25 years ago, although that case involved only one employee rather than 15. It was a case where there was credited testimony that a supervisor was told to get rid of a pro-union employee. He did so by giving her a bad evaluation, and there was a lot of litigation over how bad the employee really was, and this court upheld the board's finding of discrimination on the ground that in light of the credited testimony, it was clear that the marching orders were to fire the employee because of union activity, regardless of how good or bad she really was. And on the credited testimony here, the clear purpose was to use the evaluation system to get rid of union activists, regardless of whether they really were bad employees. Counsel, what is the actual remedial order that we're asked to enforce here? The order, the board's order here is to reinstate the discriminates and pay them back pay. Which would be effective when? If we were to enforce the order, it would be? Effective now and would be back pay back to? Back to when they should have been recalled. And by the way, there are some problems which will have to be dealt with at compliance, but which are not in this record, but I will not go into those now. 1995 or 1996? 1996. But in any case, and I also am, the delay is regrettable. But in any case, now as far as the evaluations, what the administrative law judge found with regard to the evaluation process, and it's at page nine of the excerpts of record, was that I have found that the evaluation process, however benign or merit-based the original concept was, it was abandoned by Baird and the respondent, meaning the employer, and the evaluation process was converted into a simple device for removing suspected leading union adherence. And in this connection, I would point out that the employer's explanation of how it carried out the evaluations was full of inconsistencies and implausibilities. It could never get its story straight on just how it came up with the numbers it came up with for individual employees. First, it relies on the fact that the initial numbers were compiled by Senora C. Fuentes, who herself was not shown to have union animus, but she was at the meeting where Mr. Baird made his remark, and she knew that he would be going over every evaluation she made, as indeed he did at great length. And so she knew what he wanted, and so she knew what her marching orders were. She didn't have to have animus herself. I think we understand that. Could you just help me a little bit with why there is so much delay here? The events took place in 96. The ALJ's decision was in 98. The Board's decision appears to have been in 99. And this appeal, this petition was filed in 2003? Well, I know that some of it was due to settlement efforts, which also took place after the application was filed, and unfortunately were not successful. I am not sure why it took four years to get the case to this court, and I regret it. But... Can you tell us why? What? But is there any reason in the record that... There's nothing in the record that shows why it happened. Anyway, to continue on the evaluation system, Ms. C. Fuentes was asked, first called by the General Counsel and asked why the question in particular, how she drew the line in particular between 7 and 8, which turned out to be the life or death decision. She first testified, well, I did it on the basis of people talking too much to their neighbors. And then Berndt got on the stand and said, I told her to base it entirely on the quality of production and on the quality of their work and on the speed of their work, not on personality, because that's too subjective, which is interesting because quality of work judgments were entirely subjective, and curiously, speed of work was done entirely subjectively, even though to the extent that they had quality control reports, those provided some objective evidence, at least as the people who were paid on a piece rate basis, because obviously the people who earned more money and were paid on a piece rate basis must have been the faster workers. And indeed, some of the discriminatees were piece rate workers and were paid more than some of the people who were retained. The claim is that there was a failure to consider Orchard Siding's own evaluation of each employee. What is your response to that? Well, there was a finding made that their evaluation system was shot through with animus. This was the finding of the? Of the ALJ. That was upheld by the board? Yes. Okay. And I'm pointing out anyway. So then C. Fuentes got back on the stand after this testimony by Barrett, which was inconsistent with her prior testimony, and then she testified, well, the eights were people who only had problems in one area or maybe who had one bad day or were people who had more persistent problems, which might have been reflected in their warnings, and yet there's plenty of testimony that personnel records, including disciplinary warnings, were also not taken into account. So their whole testimony on what they did and didn't base decisions on is a mass of contradictions. Mr. Fleischer, we understand that you've been doing this a long time, and it's taken a long time to get this case before the court, but I think that it's all pretty much in the record and fully briefed. Do the other judges have any questions that they want to ask? Okay. That's all. All right. Thank you. Have a couple minutes. I'd like to refer the court to the ALJ's decision, which was adopted by the board, on the issue of the evaluation process. Here's what he said. The evaluation process, pardon me, he referred to the general counsel's argument that the process was flawed. And then he goes on to state, but referred to these as, he referred to these as, quote, minor inconsistencies in testimony and gaps or puzzling elements in a described series of events. That's an ER7. He concluded that these gaps are not, in this case, sufficient standing alone to carry the burden the government bears. That's what he said. He never went in and evaluated the competency of these employees, and that really is where this problem lies. Secondly, Your Honor, I also want to bring to the court's attention the general standard under the Luisi-Trek lines cited in our brief concerning this court's discretion and authority concerning the evaluation of credibility resolutions on the part of the board. Third point, I want to address the board's concern, pardon me, the court's concern about the timing of this matter. After the board's decision was issued, the employer offered reinstatement to all the employees. They were reinstated. I think two of them declined reinstatement. It's not in the record, but it's okay. Thank you very much. Thank you. The matter just argued is submitted for decision. We'll hear the last case for our
judges: Schroeder, Browning, Tashima